IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CINDA MCLAUGHLIN, | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | : |
| | : NO. 12-3272 |
| GLAXOSMITHKLINE, L.L.C., | : |
| CADILA HEALTHCARE, ZYDUS | : |
| PHARMACEUTICALS, and | : |
| APOTEX, INC. | : |
| | : |
| Defendant. | : |

### MEMORANDUM

BUCKWALTER, S. J.                                                                                                      October 17, 2012

Currently pending before the Court is the Motion of Defendant GlaxoSmithKline to Transfer Venue to the Western District of Louisiana pursuant to 28 U.S.C. § 1404. For the following reasons, the Motion is granted and the case is transferred to the United States District Court for the Western District of Louisiana.

**I.     FACTUAL AND PROCEDURAL HISTORY**

According to the facts as set forth in the Complaint, this action was brought by Plaintiff, Cinda McLaughling as a result of injuries she allegedly sustained after ingesting the drug Paxil and its generic equivalent, paroxetine. (Compl. ¶ 1.) Paxil is designed, developed, manufactured, promoted, marketed, and distributed by Defendant GlaxoSmithKline ("GSK"). (Id. ¶ 8.) Paroxetine is designed, manufactured, tested, marketed, distributed, promoted, and sold by both Defendant Apotex and Defendant Cadila, as well as Cadila's parent organization, Defendant Zydus. (Id. ¶¶ 9–10.)

On or about June 10, 2010, Plaintiff underwent aortic and mitral valve replacement at St. Francis Medical Center in Monroe, Louisiana. (Id. ¶ 11.) Just prior to this surgery, Plaintiff had been prescribed and began taking Paxil and paroxetine to treat depression. (Id. ¶ 16.) After the surgery, Plaintiff found that her aortic valve "was thickened, with myxoid degeneration, without atherosclerosis or calcification." (Id. ¶ 13.) Additionally, "the microscopic analysis showed fibrous connective tissue with broad areas of proliferation with a pale blue, almost myxoid matrix on the sides of the valves and within the central, thickened portions of the leaflets." (Id.)

Plaintiff's mitral valve also demonstrated problems post surgery:

> [I]t was thickened, the cordae tendinae were shortened, myxoid degeneration was present, and the valve did not show atherosclerosis or calcification. The microscopic analysis showed a thickened leaflet with pale blue stroma with slender fibroblasts, causing considerable thickening of the valve. Additionally, portion of the myxoid tissue appeared layered or laminated to the surface of the valve while other portions were present within the substance of the valve, particularly of the thickened rolled edge.

(Id. ¶ 14.) Plaintiff notes that she had previously undergone coronary artery bypass surgery in January of 2004, after which she did not have any problems with her aortic or mitral valves. (Id. ¶ 15.) Since then, she has developed aortic insufficiency, mitral senosis, and mitral insufficiency. (Id.) She has experienced several recurrent bouts of congestive heart failure with shortness of breath to the degree that surgery to replace her aortic and mitral valves became necessary. (Id.) Plaintiff believes that her use of Paxil and paroxetine caused these conditions. (Id. ¶¶ 17–19.)

Plaintiff brought suit on June 8, 2012, alleging ten causes of action, including (1) design defect, (2) manufacturing defect, (3) failure to warn, (4) breach of express warranty, (5) negligence, (6) punitive damages, (7) fraud, (8) negligent misrepresentation, (9) negligence per se, and (10) unjust enrichment. Plaintiff filed Motions to Voluntarily Dismiss Defendants

Apotex, Cadila, and Zydus on October 10, 2012.  Defendant GSK filed a Motion to Dismiss, a Motion to Stay Proceedings, and the instant Motion to Transfer on August 31, 2012.  Plaintiff filed her Opposition to the Motion to Transfer on September 21 and supplemented this Opposition on September 24.  GSK filed a Reply brief in support on October 10.  The court will now consider the merits of Defendant's Motion to Transfer Venue.

**II.     DISCUSSION**

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer an action to any other district "where it might have been brought" if this transfer is "for the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a); see also Connors v. UUU Prods., No. Civ.A.03-6420, 2004 WL 834726, at *6 (E.D. Pa. Mar. 5, 2004).  The determination of whether to transfer venue pursuant to § 1404(a) is governed by federal law.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877–878 (3d Cir. 1995) (federal law applies because questions of venue are procedural, rather than substantive).

Analysis of a request for a § 1404(a) transfer has two components.  First, both the original venue and the requested venue must be proper.  Id. at 879.  Venue, in a case based on federal question jurisdiction, is proper only in "(1) a jurisdiction where any of defendant resides if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or issues giving rise to the claim occurred . . ., or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391(b).

Second, because the purpose of allowing § 1404(a) transfers is "'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary

inconvenience and expense,'" Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)), the Court is required to undertake a balancing test in deciding whether the "interests of justice [would] be better served by a transfer to a different forum." Jumara, 55 F.3d at 879. The Third Circuit has outlined a non-exhaustive list of pertinent public and private interest factors to be weighed in this balancing test. The private interests include: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. Id. at 879. The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id. at 879–80. The burden falls on the moving defendant to show the desirability of transferring venue and to present evidence upon which the court may rely in justifying transfer. Fellner ex rel. Estate of Fellner v. Phila. Toboggan Coasters, Inc., No. Civ.A.05-1052, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005).[1] Notably, analyses of transfers under § 1404(a) are "flexible and must be made on the unique facts of each case."[2] Job

---

[1] "Appropriate supporting evidence includes documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties." Fellner, 2005 WL 2660351, at *4.

[2] The Third Circuit has noted that its extensive enumeration of factors to be balanced makes "a written opinion setting forth the reasons for transfer . . . highly desirable." Jumara, 55 F.3d at 880 (internal quotations omitted).

Haines Home for the Aged v. Young, 936 F. Supp. 223, 227 (D.N.J. 1996) (internal quotations omitted).

In the case at bar, neither party disputes that the case "might have been brought" in Defendant's requested venue of the Western District of Louisiana. The Complaint at issue clearly acknowledges that Plaintiff is a resident of Ouachita Parish, Louisiana, which is within the Western District of Louisiana. (Compl. ¶ 2.) Additionally, a substantial part of the alleged actions occurred in the Western District of Louisiana. Accordingly, the Court turns to the second part of the inquiry: whether the convenience of the parties and witnesses, as well as the interests of justice, would be served by transferring this case to the Western District of Louisiana. Considering the private and public interests enumerated by the Third Circuit Court of Appeals, the Court finds that such a transfer is indeed proper.

### A.      Private Interests

#### 1.      Plaintiff's Choice of Venue

The analysis commences with an examination of Plaintiff's choice of venue, as manifested by where the suit was originally brought. As a general rule, a plaintiff's choice of venue is of paramount consideration and "should not be disturbed lightly." In re Amkor Tech., Inc. v. Sec. Litig., No. Civ.A.06-298, 2006 WL 3857488, at *3 (E.D. Pa. Dec. 28, 2006) (quoting Weber v. Basic Comfort, Inc., 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001)). "Moreover, where . . . the plaintiff files suit in its home forum, that choice is entitled to considerable deference." Am. Argo Corp. v. U.S. Fid. & Guar. Co., 590 F. Supp. 1002, 1004 (E.D. Pa. 1984).

Nonetheless, there are circumstances wherein a plaintiff's choice of forum is not entitled to significant deference. For example, "a plaintiff's choice [of forum] receives less weight where

none of the operative facts occurred in the selected forum." Fid. Leasing, Inc. v. Metavec Corp., No. Civ.A.98-6035, 1999 WL 269933, at *2 (E.D. Pa. Apr. 29, 1999); see also Rowles v. Hammermill Paper Co., Inc., 689 F. Supp. 494, 496 (E.D. Pa. 1988) ("plaintiff's choice of forum merits less deference when none of the conduct complained of occurred in plaintiff's selected forum.") (citations omitted). Moreover, where plaintiff files suit outside his or her own forum, plaintiff's choice of forum is entitled to less deference. Copley v. Wyeth, Inc., No. Civ.A.09-722, 2009 WL 2160640, at *3 (July 17, 2009).

As noted above, the Plaintiff in this case is domiciled in the Western District of Louisiana but decided to bring suit in the Eastern District of Pennsylvania, where GSK has its principal place of business. Additionally, many of the facts of this case—including Plaintiff's ingestion of Paxil and Paroxetine—occurred in the Western District of Louisiana. Thus, while Plaintiff's choice of forum is still granted some weight in the decision, it is lessened because she is not requesting a home forum or one in which a number of the operative facts in the case occurred.

### 2. Defendants' Preference

The second factor—defendant's forum choice—is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." EVCO Tech. and Dev. Co. v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003) (citations omitted). Nevertheless, Defendant's preference is for a Louisiana forum and weighs in favor of transfer.

### 3. Whether the Claim Arose Elsewhere

"Typically the most appropriate venue is governed by the third factor – where a majority of events giving rise to the claim arose. In re Amkor Tech., Inc. Secs. Litig., No. Civ.A.06-298,

6

2006 WL 3857488, at *5 (E.D. Pa. Dec. 28, 2006). "When the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with the interests in efficiency and convenience, other private interests are afforded less weight." Cancer Genetics, Inc. v. Kreatech Biotech. B.V., No. Civ.A.07-273, 2007 WL 4365328, at *5 (E.D. Pa. Dec. 11, 2007). The "operative facts" of a products liability action are deemed to occur where the allegedly defective product was used and injury occurred. See In re Consol. Parlodel Litig., 22 F. Supp. 2d 320, 326 (D.N.J. 1998) (holding that although allegedly defective drug was designed and manufactured in New Jersey, the cause of action arose in the home district of each plaintiff where the drug was marketed and consumed); Campbell v. FMC Corp., No. Civ.A.91-7536, 1992 WL 176417, at *2 (E.D. Pa. July 17, 1992) (transferring case to venue where product was used and injury occurred); see also Musser v. Consol. Rail Corp., No. Civ.A.92-4201, 1992 WL 247296, at *2 (E.D. Pa. Sept. 24, 1992) (transferring action where "the most persuasive factor" was that the accident and injury occurred in transferee district and plaintiff was treated by medical institutions in that district).

Nearly all of the operative facts the parties highlight which gave rise to this case occurred in the Western District of Louisiana. This is where Plaintiff lived at all relevant times, and it is where she was prescribed and consumed both Paxil and paroxetine. The medical treatment Plaintiff received before and after her ingestion of Paxil and paroxetine also occurred in Louisiana. As a result, this factor weighs heavily in favor of transfer.

    **4.**    **Convenience of the Parties**

Defendant again has the stronger case when it comes to convenience of the parties. Even though Plaintiff is opposing transfer, the fact remains that she and her counsel both reside in the

Western District of Louisiana. Moreover, although its headquarters is located in Philadelphia, GSK argues that Philadelphia is no more convenient for it than Louisiana. GSK notes in its briefing that it is a global company and that many of the relevant witnesses which will testify on its behalf are from outside Philadelphia, including in the United Kingdom and North Carolina. For such witnesses, trial in Louisiana versus Pennsylvania makes little difference in terms of convenience. Thus, despite Plaintiff opposing transfer, her residence in Louisiana combined with GSK's national presence weighs in favor of transfer.

### 5. Convenience of Witnesses

The next private factor the Court includes in the balancing test is the convenience of material witnesses. This "is a particularly significant factor in a court's decision whether to transfer." Idasetima v. Wabash Metal Prods., Inc., No. Civ.A.01-197, 2001 WL 1526270, at *2 (E.D. Pa. Nov. 29, 2001) (citing Lindley v. Caterpillar, Inc., 93 F. Supp. 2d 615, 617 (E.D. Pa. 2000)). There are many different types of witnesses, however, and each one carries a different weight. "[F]act witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, have traditionally weighed quite heavily in the 'balance of convenience' analysis." Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 203 (D. Del. 1998). Party witnesses or witnesses who are employed by a party, on the other hand, have little impact on the "balance of convenience" analysis since each party is obligated to procure the attendance of its own employees for trial. Id. Likewise, expert witnesses or witnesses who are retained by a party to testify carry little weight because they "are usually selected because of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." See Webster-Chicago Corp. v. Minneapolis-

Honeywell Regulator Co., 99 F. Supp. 503, 505 (D. Del. 1951); see also Howell v. Shaw Indus. Nos. Civ.A.93-2068, 93-2638, 1993 WL 387901, at *5 (E.D. Pa. Oct. 1, 1993) ("[T]he convenience of expert witnesses is generally given little weight in a motion to transfer venue.").

In the current matter, this factor weighs heavily towards transfer. As Defendant argues, relevant fact witnesses to the matter—including Plaintiff's treating physicians—are from Louisiana and would be outside subpoena power if the case were in Pennsylvania. Were the case to remain in Philadelphia, Defendants would only have the ability to subpoena witnesses located within 100 miles of the Eastern District of Pennsylvania. See Fed. R. Civ. P. 45(b)(2). Plaintiff argues that Philadelphia (and thus the Eastern District of Pennsylvania) is the "Nerve Center" of GSK, and that relevant discovery will be made easier if venue remains here. Plaintiff specifically disputes that the relevant fact witnesses will be in Louisiana. She states that, "[t]o the contrary, most of these witnesses will be in Pennsylvania." (Pl.'s Supp. Opp'n to Def.'s Mot. to Transfer 2.) However, Plaintiff does not cite a single relevant witness which she would be unable to compel to testify were the case moved to Louisiana. In a case factually similar to this one in which transfer was granted, our sister court noted, "Plaintiffs' concern that GSK may not make its employees available in the Western District of Michigan is unfounded because GSK's employees are party witnesses who are required to comply with a subpoena regardless of where they reside." White v. SmithKline Beecham Corp., No. Civ.A.06-3025, 2007 WL 1237952, at *4 (E.D. Pa. Apr. 26, 2007) (citing Fed. R. Civ. P. 45(c)(3)(A)(ii). Because transfer would benefit Defendant and there is no indication of an inconvenience to Plaintiff, this factor weighs heavily in favor of transfer.

9

### 6. Location of Books and Records

The final private factor the Court considers is the location of books and records. As recognized by other decisions, however, "the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." Lomanno v. Black, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) (quoting Am. High-Income Trust v. AlliedSignal, Inc., No. Civ.A.00-690, 2002 WL 373473, at *5 (D. Del. March 7, 2002) (citations omitted)). This factor should thus be limited to the extent that the files could not be produced in the alternative forum. Jumara, 55 F.3d at 879.

Plaintiff notes that Defendant's internal documents will be more easily obtained if venue is in Pennsylvania. As Defendant correctly notes in its in response, however, Federal Rule of Civil Procedure 34 provides that Plaintiff is entitled to compulsory discovery of GSK's relevant documents regardless of where GSK resides or where the case is tried. Because any burden of producing these documents would be on GSK, there is no indication that this factor weighs against transfer.

### B. Public Interests

#### 1. Enforceability of Judgment

The parties do not dispute that a judgment entered against Defendants in either forum would be enforceable. Therefore, the Court also assigns no weight to this factor.

#### 2. Practical Considerations that Could Make the Trial Easy, Expeditious or Inexpensive

Although the parties do not address this issue specifically, the court notes that the location of potential witnesses cited above is also a relevant factor for an expeditious and

inexpensive trial. Additionally, this action has been before the Court for a relatively short period of time and, thus, "a transfer will not significantly disrupt the litigation or result in a waste of judicial resources." Zokaites v. Land-Cellular Corp., 424 F. Supp. 2d 824, 841 (W.D. Pa. 2006). Thus, this factor weighs in favor of transfer.

### 3. The Relative Administrative Difficulty in the Two Fora Resulting from Court Congestion

As Defendants note, the Western District of Louisiana is considerably less congested than the docket in the Eastern District of Pennsylvania. The 2011 statistics from the United States Courts website show that over a 12 month period ending September 30, 2011, the Western District of Louisiana had an average of 371 pending cases per judge, whereas the Eastern District of Pennsylvania had an average of 936 pending cases per judge.[3] We note that, for all practical purposes, the calendar of this Court is not so full as to deny the parties prompt and thorough consideration of their case. Nonetheless, the seemingly lighter congestion in the Western District of Louisiana favors transfer. See Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973) (fact that District of New Jersey had 353 cases per judge and Middle District of North Carolina had 177 cases per judge weighed in favor of transfer); Hardaway Constructors, Inc. v. Conesco, 583 F. Supp. 617, 621 (D.N.J. 1983) (transferring venue from New Jersey to Maryland in part because Maryland's docket was "lighter" than New Jersey's).

### 4. The Local Interest in Deciding Controversies at Home

The Court's next consideration—which of the two potential districts maintains a greater

---

[3]See http://www.uscourts.gov/uscourts/Statistics/FederalCourtManagementStatistics/2011/District%20FCMS%20Profiles%20September%202011.pdf#page=16;
http://www.uscourts.gov/uscourts/Statistics/FederalCourtManagementStatistics/2011/District%20FCMS%20Profiles%20September%202011.pdf#page=31

interest in the action—bears significantly on our decision. "The burden of jury duty should not be placed on citizens with a remote connection to the lawsuit." Nat'l Prop. Investors VIII v. Shell Oil Co., 917 F. Supp. 324, 330 (D.N.J. 1995). Typically, when a substantial amount of the alleged culpable conduct occurred in the chosen forum, that court favors retaining jurisdiction as a matter of local interest. Cancer Genetics, 2007 WL 4365328, at *6; see also In re E. Dist. Repetitive Stress Injury Litig., 850 F. Supp. 188, 195 (E.D.N.Y. 1994) ("When an action involves injuries sustained in a particular locale, the public interest supports adjudication of the controversy in that locale where it may be a matter of local attention, rather than in a remote location where it will be learned of only by report.").

As noted before, the operative facts in the current case occurred in Louisiana. Any injury occurred to Plaintiff, a Louisiana resident, while she was present in the state. The Complaint does not allege any action taking place in Philadelphia or Pennsylvania. All these facts weigh in favor of transfer to Louisiana.

### 5. The Public Policies of the Fora

The parties have produced no evidence to suggest that the public policies of either Louisiana or Pennsylvania weigh one way or another with regards to the issue of transfer. Accordingly, we grant the factor no weight.

### 6. The Familiarity of the Trial Judge with the Applicable State Law in Diversity Cases

Finally, "[j]ustice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law." Am. Senso RX, Inc. v. Banner Pharmcaps, Inc., No. Civ.A.06-1929, 2006 WL 2583450, at *6 (D.N.J. Sep. 6, 2006) (quotations omitted). In

a diversity action, a federal court must apply the choice of law rules of the state in which it sits. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497, 61 S. Ct. 1020, 1021–22 (1941). When, however, a case is transferred for the convenience of the parties, pursuant to 28 U.S.C. § 1404(a), the transferee court must apply the law, including the choice of law rules, that the transferor court would have applied. Van Dusen v. Barrack, 376 U.S. 612, 635–37 (1964).

Pennsylvania's choice of law approach adopts a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc., 94 F. Supp. 2d 589, 594 (E.D. Pa. 1999) (quoting Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964)). It entails three steps. First, the court must determine whether a real conflict exists, that is, whether these states would actually treat this issue any differently. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007); Prell v. Columbia Sussex Corp., No. Civ.A.07-2189, 2007 WL 3119852, at *3 (E.D. Pa. Oct. 22, 2007). If there is no substantive difference between the laws of the competing states, no real conflict exists and forum law applies. Hammersmith, 480 F.3d at 230; Air Prods. and Chems. v. Eaton Metal Prods. Co., 272 F. Supp. 2d 482, 490 n. 9 (E.D. Pa. 2003). Where a real conflict exists, the court moves to the second step and examines the governmental policies underlying each law in order to classify the conflict as true, false or an unprovided for situation. Hammersmith, 480 F.3d at 230. A false conflict occurs where only one state's interests would be impaired and the law of the interested state applies. LeJeune v. Bliss-Salem Inc., 85 F.3d 1069, 1071 (3d Cir. 1996). Where, on the other hand, each jurisdiction has a governmental policy or interest that would be impaired by the application of the other state's law, a true conflict exists. Id. In the case of a true conflict, the court turns to the third step to "determine which state has the

13

greater interest in the application of its law." Hammersmith, 480 F.3d at 231.  This determination demands that a court weigh the contacts each jurisdiction has with the dispute on a qualitative scale according to the extent they implicate the policies and interests underlying the particular dispute before the court.  Id.

In the current case, GSK argues that there is a conflict between the products liability law of Pennsylvania, which is a common law state, and Louisiana, which follows a statutory regime.  GSK then contends that Louisiana has the greater interest in the matter, as the victim is from Louisiana and allegedly ingested the drug within the state.  As such, GSK argues that Louisiana has the greater interest in the application of its own law.  Because transfer to Louisiana would result in a Louisiana judge applying the Louisiana statutory regime on products liability, Defendant argues this factor weighs in favor of transfer.

Without conducting a full choice of law analysis and comparison of Pennsylvania law with Louisiana law, the Court finds that this factor does not weigh heavily in favor of keeping the case in the Eastern District of Pennsylvania.  Assuming Defendant's analysis is right, it would make more sense for a Louisiana judge to apply Louisiana statutory law.  Even if, however, Pennsylvania law were to apply, the Pennsylvania common law on products liability is not the kind of complex or unique law that would be difficult for a foreign judge to implement.  Federal judges are frequently called upon to apply the laws of other states, and basic products liability principles are not so complicated as to advocate heavily in favor of transfer.  See 15 Wright, Miller, & Copper, Federal Practice and Procedure § 3854, at 266–267 (2d ed.1986) (familiarity with state law not given great weight, particularly when the applicable state law appears clear).  As such, this factor weighs slightly in favor of transfer.

### III. CONCLUSION

Based on the factors discussed above, the Court concludes that Louisiana is the most appropriate venue for this case. Although Plaintiff chose to bring suit in the Eastern District of Pennsylvania, and this Court recognizes the deference normally granted to Plaintiff's choice, nearly every other private and public interest weighs in favor of transfer to the Western District of Louisiana. Furthermore, the Court notes that Defendant cites a number of cases in this district that are factually analogous and in which transfer was granted. See Blain v. SmithKlineBeecham Corp., 240 F.R.D. 179 (E.D. Pa. 2007), White v. SmithKline Beecham Corp., No. Civ.A.06-3025, 2007 WL 1237952 (E.D.Pa. Apr. 26, 2007), Elwell v. SmithKlineBeecham Corp., No. Civ.A.06-3020, 2007 WL 1237957 (E.D. Pa. Apr. 25, 2007); Fisher v. SmithKlineBeecham Corp., No. Civ.A.06-3021, 2007 WL 1234845 (E.D. Pa. Apr. 25, 2007). The court in those cases reaches the same result here as this Court does here. Defendant GSK's Motion to Transfer pursuant to 28 U.S.C. §1404(a) is granted and the matter is transferred to the Western District of Louisiana for further proceedings.

An appropriate order follows.