RECEIVED

JAN 06 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY:

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| CINDA MCLAUGHLIN | CIVIL ACTION NO: 12-2946 |
| VERSUS | JUDGE DONALD E. WALTER |
| GLAXOSMITHKLINE, LLC | MAGISTRATE JUDGE HAYES |

### MEMORANDUM RULING

Before this Court is a Motion to Dismiss [Doc. 53] Plaintiff's Second Supplemental and Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant GlaxoSmithKline LLC ("GSK"). The motion asserts that this Court should dismiss Plaintiff's SAC because (1) Plaintiff impermissibly pleads product liability claims that fall outside the Louisiana Product Liability Act, LA. R.S. §§ 9:2800.51 *et seq.* ("LPLA") and (2) to the extent they do attempt to plead LPLA claims, they have failed to meet the minimum pleading standards required by the Federal Rules of Civil Procedure. [Doc. 53].

Having considered the motion, the response, the reply, the SAC, the record, and the applicable law, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

This case arises from alleged injuries suffered by Plaintiff Cindi McLaughlin, a resident of Louisiana, from the ingestion of Paxil and Paxil CR (collectively "Paxil"), a prescription medication manufactured by GSK. [Doc. 52 (SAC)]. Plaintiff alleges that she began taking Paxil in 2003 for depression and continued using the medication through March of 2007. In 2007, Plaintiff began

1

using the generic form of Paxil until 2010. Plaintiff alleges that her ingestion of Paxil and the various forms of generic paroxetine caused excess serotonin, which in turn damaged her heart valves and necessitated her 2010 surgery. *Id.* at ¶ 18.

On June 8, 2012, Plaintiff filed this suit in the United States District Court for the Eastern District of Pennsylvania, the location where GSK has its principal place of business. [Doc. 1]. GSK filed a motion [Doc. 7] to transfer this case pursuant to 28 U.S.C. § 1404(a) from the Eastern District of Pennsylvania to this Court; the motion was granted on November 20, 2012. [Doc. 41]. Plaintiff submitted her First Supplemental and Amended Complaint on September 21, 2012. [Doc. 18].

On August 21, 2013, Plaintiff filed her SAC. Plaintiff's SAC alleges ten causes of action against the Defendants: (I) products liability- design defect; (II) products liability-manufacturing defect; (III) products liability- failure to warn; (IV) products liability- breach of express warranty; (V) negligence; (VI) punitive damages; (VII) fraud; (VIII) negligent misrepresentation; (IX) negligence *per se*; and (X) unjust enrichment. [Doc. 52 at pp. 13-22 (SAC)]. In short, each cause of action pertains to the allegedly unsafe manner in which Paxil was designed, developed, manufactured, distributed, marketed, promoted, labeled, or represented. *Id.*

On September 20, 2013, GSK filed the instant motion to dismiss Plaintiff's SAC. [Doc. 53]. Plaintiff filed a response on October 15, 2013. [Doc. 63]. GSK then filed a reply. [Doc. 66]. This Court is now ready to rule on this motion.

## II. APPLICABLE LAW

### A. Standard of Law

Under Federal Rule of Civil Procedure 12(b)(6) a defendant may move to dismiss a claim

2

for "failure to state a claim upon which relief can be granted." A pleading will survive a Rule 12(b)(6) motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept all of the plaintiff's allegations as true. *Twombly*, 550 U.S. at 555. However, the plaintiff's pleading must contain more than a "formulaic recitation of the elements of a cause of action." *Id.*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

**B. Overview of the LPLA**

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." LA. R.S. § 9:2800.52; *Demahy v. Schwarz Pharm, Inc.*, 702 F.3d 177, 182 (5th Cir.2012). Under the LPLA, a plaintiff must prove that (1) the defendant is the manufacturer of the product; (2) her injury or damage was proximately caused by a characteristic of the product; (3) this characteristic made the product "unreasonably dangerous"; and (4) the plaintiff's damage arose from a reasonably anticipated use of the product. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261 (5th Cir.2002).

A plaintiff may prove that a product is "unreasonably dangerous" only by establishing that it is so: (1) in construction or composition; (2) in design; (3) due to inadequate warning; or (4) due to nonconformity to an express warranty. *Id.*; LA. R.S. § 9:2800.54(B)(1–4). Because the LPLA

3

provides the exclusive theories of liability for manufacturers of products, recovery "from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set for in" the LPLA is not possible. LA. R.S. § 9:2800.52.

### III. ANALYSIS

**1. Choice of Law Analysis**

Because this case was transferred to this Court from the Eastern District of Pennsylvania, this Court must first conduct a choice of law analysis to determine whether Pennsylvania or Louisiana law applies. A federal court exercising diversity jurisdiction generally must apply the choice of law rules of the state in which the court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494-97 (1941). In this case, however, Plaintiff originally filed suit in Pennsylvania, after which time the case was transferred to this Court pursuant to 28 U.S.C. § 1404(a). The Supreme Court has held that, in such circumstances, the transferee court must apply the law that would have been applied by the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 640 (1964); *Crase v. Astroworld, Inc.*, 941 F.2d 265, 267 (5th Cir. 1991). This Court is required to apply Pennsylvania's choice of law methodology.

Under Pennsylvania's choice of law rules, a court must initially determine whether a conflict exists. *See, e.g., Ghallagher v. Medical Research Consultants*, 2004 WL 2223312, at *11 n. 15 (E.D. Pa. Oct. 1, 2004). If a conflict exists, the court must then characterize the "conflict" between the proposed competing bodies of law. *See, e.g., Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005). Finally, if the conflict is characterized as a true conflict, the court must analyze which state has the greater interest in the application of its law. *See Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854, 855 (Pa. 1970).

This Court easily finds that there is a conflict between Louisiana and Pennsylvania law with respect to manufacturer and products liability. Pennsylvania courts use an acutely different approach in evaluating product liability claims, whereas Louisiana courts use the LPLA. *See Campbell v. Fawber*, CIV.A. 1:11-1215, 2013 WL 1330153 (M.D. Pa. Mar. 29, 2013) (discussing how Pennsylvania courts approach product liability claims). GSK correctly points out that many federal courts have found that Pennsylvania's product liability laws are substantively different from a plaintiff's home state. In *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602, 614 (E.D. Pa. 2008), for instance, the court stressed that Pennsylvania courts allow claims of negligence to be brought in conjunction with a products liability claim. Because the LPLA provides the exclusive theories of recovery, a true conflict exists between them.

This Court concludes that Louisiana has a greater interest in the application of its law. Louisiana is the state of Plaintiff's residence, the location where Plaintiff purchased, ingested, and was prescribed Paxil, and the situs of Plaintiff's alleged injuries. Furthermore, Louisiana is the state where Plaintiff was treated by her physicians. [Doc. 52 (SAC)]. In her opposition to this motion, Plaintiff asserts only marginal contacts with Pennsylvania regarding business decisions made by GSK to support the argument that Pennsylvania law should apply; this Court finds the contacts cited unavailing. [Doc. 63].[1] For these reasons, Louisiana law applies to this case.

---

[1] *See Bearden v. Wyeth*, 482 F. Supp. 2d 614, 622 (E.D. Pa. 2006) (a federal court in Pennsylvania found that Arkansas had a greater interest in applying its laws to protect and provide redress for a citizen who was "prescribed a drug, received any relevant representations or warnings about it, purchased it, ingested it, and was injured by it—all within his home state of Arkansas."); *see also Knipe*, 583 F. Supp. 2d at 616 (holding that the jurisdiction in which the drug was prescribed and ingested "clearly maintains the strongest interest in applying its applicable law to regulate the sale, prescription, and ingestion of pharmaceuticals within its borders.").

### 2. Plaintiff's non-LPLA Claims: Counts V Through X

Having determined that Louisiana law applies to this case, this Court will first address the claims that fall outside the LPLA. Plaintiff asserts six claims that fall outside the ambit of the LPLA: negligence; punitive damages; fraud; negligent misrepresentation; negligence per se; and unjust enrichment. As noted above, by its plain language, the LPLA provides that it establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth under the LPLA. Plaintiff's claims against GSK arise out of her use of its product: Paxil. Accordingly, the LPLA establishes Plaintiff's sole theories of recovery against GSK, and any claims pled beyond the scope of her exclusive remedy under the LPLA must be dismissed. *See Kennedy v. Pfizer, Inc.*, CIV.A. 12-01858, 2013 WL 4590331 (W.D. La. Aug. 28, 2013). Specifically, this means that Count V (negligence); Count VI (punitive damages); Count VII (fraud); Count VIII (negligent misrepresentation); Count IX (negligence per se); and Count X (unjust enrichment) are hereby **DISMISSED**.

### 3. Plaintiff's LPLA Claims

The Court now considers whether Plaintiff has alleged a right to relief under the LPLA that is plausible on its face. As briefly discussed earlier, a plaintiff may prove that a product is "unreasonably dangerous" only by establishing that it is so: (1) in construction or composition; (2) in design; (3) due to inadequate warning; or (4) due to nonconformity to an express warranty. LA. R.S. § 9:2800.54(B)(1–4). Plaintiff's SAC alleges four causes of action against the defendants under the LPLA: design defect; manufacturing defect; failure to warn; and breach of express warranty. [Doc. 52 (SAC)]. GSK contends that the Plaintiff has failed to state a claim under any of these

theories.

### (1) Design Defect (Count I)

To establish a design defect under the LPLA, a plaintiff must show that at the time the product left the manufacturer's control, (1) "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage," and (2) "[t]he likelihood that the products design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." LA. R.S. § 9:2800.56.

In this case, Plaintiffs' SAC, read in its entirety, is devoid of any reference to an alternative design. Indeed, the Plaintiff fails to even allege that an alternative design existed. Federal courts in Louisiana have consistently held that an alternative design is crucial to survive a motion to dismiss. *See, e.g., Kennedy,* 2013 WL 4590331; *Watson v. Bayer Healthcare Pharm., Inc.,* CIV.A. 13-212, 2013 WL 1558328 (E.D. La. Apr. 11, 2013). As such, Plaintiff's SAC fails to allege sufficient facts regarding a purported design defect claim. Accordingly, this claim is **DISMISSED**.

### (2) Construction or Composition (Count II)

To prevail on a construction or composition defect claim, a plaintiff must show that: (1) the defendant is a manufacturer of the product; (2) the product proximately caused the plaintiff's damage; (3) the damaging characteristic of the product rendered it "unreasonably dangerous in construction or composition"; and (4) the plaintiff's damages arose from a reasonably anticipated use of the product. *See Rollins v. St. Jude Medical,* 583 F.Supp.2d 790, 800 (W.D. La. 2008) (*citing Gomez v. St. Jude Med. Daig Div., Inc.,* 442 F.3d 919, 932 (5th Cir. 2006)); *Ivory v. Pfizer Inc.,* CIV.A.09-0072, 2009 WL 3230611 (W.D. La. Sept. 30, 2009). "A product is unreasonably

dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." LA. R.S. § 9:2800.55.

This Court has reviewed Plaintiff's SAC thoroughly and finds that Plaintiff has stated facts consistent with a claim for a defect in construction or composition under LA. R.S. § 9:2800.55 to survive this motion. Plaintiff alleges numerous facts in her SAC that Paxil is unreasonably dangerous in construction or composition, including the following: (1) GSK failed to perform and/or report post-market analysis of the risks of the medications [Doc. 52 (SAC)]; (2) GSK knew or should have known that Paxil and its generic equivalents used by certain individuals could cause valvulopathy or damage to heart valves [*Id.* at p. 4]; (3) GSK knew that the drug could cause cardiac tissue to be exposed to an elevated level of serotonin [*Id.*]. Similar allegations are made throughout the SAC. In *Ivory*, 2009 WL 3230611, the court faced a very similar case and found that the plaintiff made enough factual allegations to withstand the motion to dismiss. In *Ivory*, the court also stressed that it is important to read the particular counts in the overall context of the entire complaint.[2] Considering the whole of the SAC, it is apparent that the defective construction or composition contention is a critical theme of this matter.

Quite clearly, Plaintiff's SAC contains "enough facts to state a claim to relief that is plausible

---

[2] *Id.*; *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)(*quoting* Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

on its face" to satisfy the *Twombly* standard. *See Twombly*, 550 U.S. 544, 570. At a minimum, Plaintiff has pled enough factual content to allow this Court to draw the reasonable inference that the GSK is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. Accordingly, GSK's motion to dismiss will be **DENIED** with respect to Plaintiff's purported LPLA construction or composition claim (Count II).

### (3) Inadequate Warning (Count III)

To prevail on a failure to warn or inadequate warning claim under the LPLA, a plaintiff must show that, at the time the product left the manufacturer's control, "the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its dangers to users and handlers of the product." *Stahl*, 283 F.3d at 261 (*quoting* LA. R.S. § 9:2800.57).

Based on Plaintiff's allegations, this Court can reasonably infer that GSK failed to provide an adequate warning of the dangers associated with the use of Paxil. The gravamen of Plaintiff's argument on this count is that GSK failed to warn patients and physicians of serious problems associated with Paxil, chiefly in regards to heart valve damage. [Doc. 52 at pp. 4-5 (SAC)]. This Court stresses that this particular count, along with the others, must be read in context with the entire SAC. In doing so, an inadequate warning contention is indeed a central theme of the entire SAC.

At this stage in the proceedings, this Court must only determine, when viewing the well-pleaded facts as true and in a light most favorable to Plaintiff, whether the claims meet the minimal threshold of plausibility. With this standard in mind, the Court finds that Plaintiff has sufficiently pled an inadequate warning claim against GSK pursuant to the LPLA. *See Ivory*, 2009 WL 3230611 at *4 (finding that the allegations in the complaint created a reasonable inference that

9

the defendant failed to provide an adequate warning of the dangers associated with a drug). Whether Plaintiff will ultimately be able to offer sufficient proof to support the claim is a matter the Court may more fully address within the context of a motion for summary judgment or a trial on the merits.

Because Plaintiff pled the requisite factual allegations to state a claim for inadequate warning under LA. R.S. § 9:2800.57, this claim will survive to see another day. Accordingly, GSK's motion to dismiss Count III is **DENIED**.

### (4) Express Warranty (Count IV)

To establish a breach of express warranty claim under the LPLA, a plaintiff must show that a product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product. LA. R.S. § 9:2800.58. In the SAC, Plaintiff alleges that Defendants expressly warranted that Paxil was safe and effective for the treatment of depression and other conditions. [Doc. 52 at pp. 4, 16 (SAC)]. GSK argues that Plaintiff has failed to allege the existence of an express warranty beyond general claims of safety and efficacy.

Upon due consideration, this Court finds that there are sufficient facts alleged in the SAC to support a breach of express warranty claim. Plaintiff alleges that Defendant advertised its product and promoted its product to patients and doctors. Moreover, Plaintiff suggests that she was induced to take Paxil because of an alleged express warranty. [Doc. 52 at p. 4 (SAC)]. As discussed *supra*, at a minimum, Plaintiff has pled enough factual content to allow this Court to draw the reasonable inference that the GSK is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678.

This Court agrees with the holding on this exact issue in *Ivory*, 2009 WL 3230611. In *Ivory*, the court found that *Twombly* does not require the plaintiff to set forth such precise, detailed allegations with respect to the breach of express warranty claim. Instead, the court in *Ivory* found that

"Plaintiffs' factual allegations concerning Defendant's alleged breach of express warranty are more than enough at the pleading stage 'to raise a right to relief above the speculative level.'" *Id.* at *5; *see also Harris v. Merck & Co., Inc.*, CIV.A. 12-1446, 2012 WL 5384720 (W.D. La. Nov. 1, 2012) (reaching a similar holding on the issue of the breach of an express warranty claim).

This Court finds that GSK's reliance on *Kennedy* on this specific count is misplaced. Although we agree with the result reached by the court in *Kennedy*, cited by GSK, we find Plaintiff's complaint more complete than the complaint in *Kennedy*. 2013 WL 4590331. For these reasons, GSK's motion to dismiss Count IV is **DENIED**.

## IV. CONCLUSION

Having considered the motion, the response, the reply, the record, and the applicable law, GSK's motion to dismiss [Doc. 53] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims that fall outside the LPLA's exclusive theories of liability (Counts V-X) are **DISMISSED**. Plaintiff's claim for design defect (Count I) is **DISMISSED WITH PREJUDICE**, while Plaintiff's claims for construction or composition defect (Count II), inadequate warning (Count III), and breach of express warranty (Count IV) survive.

**THUS DONE AND SIGNED**, Shreveport, Louisiana, this the 6 day of January, 2014.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE